United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT RILEY,<br><br>    Plaintiff,<br><br>    v.<br><br>T. FRIEDERICHS, et al.,<br><br>    Defendants. | Case No. 18-02283 EJD (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br>(Docket No. 17) |

Plaintiff, a California state prisoner, filed a pro se civil rights complaint under 42 U.S.C. § 1983 against medical officials at Correctional Training Facility ("CTF"). The Court found the Complaint (Docket No. 1), liberally construed, stated a cognizable Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs, and ordered service of the Complaint on Defendants. (Docket No. 4.)

Defendants Dr. T. Friederichs, Dr. Z. Ahmed, and Dr. G. Kalisher filed a motion for summary judgment (Docket No. 17, hereinafter "Mot."), and declarations and exhibits in support thereof.[1] Plaintiff filed an opposition (Docket No. 21, hereinafter "Opp."),

---

[1] Defendant Dr. Ahmed's declaration is filed under Docket No. 17-3, Defendant Dr. Friederichs's declaration is filed under Docket No. 17-4, and Defendant Dr. Kalisher's declaration is under Docket No. 17-5. Defendants submitted copies of Plaintiff's health and grievance records in support of their motion as exhibits to the aforementioned

Defendants filed a reply (Docket No. 22), and Plaintiff filed a sur-reply (Docket No. 23). For the reasons discussed below, Defendants' Motion is **GRANTED**.

## DISCUSSION

### I. Statement of Facts[2]

During the relevant time period for this action, Defendants Dr. Friederichs and Dr. Kalisher were physicians at CTF. (Friederichs Decl. ¶ 1, Kalisher Decl. ¶ 1.) Defendant Dr. Ahmed was a physician at CTF until August 2, 2017. (Ahmed Decl. ¶ 34.)

#### A. Treatment by Defendant Dr. Ahmed

On September 2, 2016, Plaintiff was seen by Defendant Dr. Ahmed for a complaint of lower back pain. (Ahmed Decl., Ex. A, at CDCR 0004, 0005, 0048-0051). Defendant Dr. Ahmed observed that Plaintiff regularly played basketball, was able to participate in normal programming, had "reasonable mobility," had been able to walk to the clinic comfortably, and was not reporting acute pain. (Id. at CDCR 0048-0049.) Defendant Dr. Ahmed prescribed ibuprofen and ordered an x-ray of Plaintiff's back. (Id. at CDCR 0049.) Plaintiff requested an MRI; Defendant Dr. Ahmed declined the request, but noted that he would discuss ordering an MRI after Plaintiff's x-ray came back. (Id.) The x-ray was performed on September 12, 2016. (Id. at CDCR 1008.) The x-ray revealed "no acute finding." (Id.)

Plaintiff returned to Defendant Dr. Ahmed on October 12, 2016. (Id. at CDCR 1008.) In that appointment, Defendant Dr. Ahmed observed that Plaintiff's gait was normal, he showed no tenderness over the affected area of his back, and he did not report acute pain. (Id. at CDCR 1008-1010) In addition, Plaintiff was able continue with his daily programming. (Id. at CDCR 1008.) Plaintiff reported that ice and ibuprofen had led to "some improvement" in his pain. (Id. at CDCR 1009.) Defendant Dr. Ahmed referred

---

declarations.

[2] The following facts are undisputed unless otherwise indicated.

2

Plaintiff to physical therapy, gave him exercises and stretches to help with back pain, and ordered an ice pack for Plaintiff. (Id.) The records do not reflect any MRI request from Plaintiff at this visit. (Id. at CDCR 1008-1010.) On October 21, 2016, Defendant Dr. Ahmed ordered Naproxen for Plaintiff's pain relief. (Id. at CDCR 0452.)

Plaintiff filed a grievance[3] regarding Defendant Dr. Ahmed's treatment ("2016 Grievance"), alleging that Defendant Dr. Ahmed had failed properly to order Naproxen and ice packs for Plaintiff. (Compl. Ex. B at 1.) Plaintiff also complained that Defendant Dr. Ahmed had "fail[ed] to give petitioner MRI to diagnos[e] back pain" and argued this violated Plaintiff's Eighth Amendment rights. (Id.)

Over the next several months, Plaintiff was evaluated by several other doctors and nurses, none of whom are defendants in this action. (Ahmed Decl. ¶¶ 9-17) (summarizing medical examinations by Nurse Valiente, Dr. Sweet, Dr. Palomero, Nurse Shen, Nurse Gultia, Nurse Viruet, and Nurse Munoz). These medical professionals observed that Plaintiff had a high level of function and did not report acute pain, and continued prescribing mild painkillers, physical therapy, and ice packs. (See id.) None of these non-defendant medical professionals ordered an MRI for Plaintiff (see id.), despite Plaintiff's request for one (see, e.g., id., Ex. A at CDCR 1006).

In February 2017, Plaintiff was again seen by Defendant Dr. Ahmed. (Id. ¶¶ 15, 17.) Defendant Dr. Ahmed again prescribed ibuprofen for Plaintiff's pain, and ordered a

---

[3] The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). CDCR also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. See id. Under the regulations, as amended effective January 28, 2011, the informal grievance level was omitted and there are now three levels: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7. "Administrative exhaustion within California requires the completion of the third level of administrative review." Jackson v. Fong, 870 F.3d 928, 933 (9th Cir. 2017). As of January 28, 2011, California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

3

new set of x-rays. (Id.) This new set of x-rays again failed to reveal any abnormality. (Id., Ex. A at CDCR 2361.) When Defendant Dr. Ahmed explained the x-ray findings to Plaintiff, Plaintiff requested an MRI or CAT scan, and Defendant Dr. Ahmed again stated that such tests were not warranted "at present." (Id. at CDCR 1003.)

Defendant Dr. Ahmed next saw Plaintiff on March 22, 2017. (Ahmed Decl. ¶ 22.) Plaintiff reported that he was not in acute pain, but that ibuprofen was not controlling his pain; Defendant Dr. Ahmed ordered Plaintiff "Tylenol #3" for pain relief. (Id., Ex. A at CDCR 1001-1002.) Tylenol #3 contains codeine. (Kalisher Decl. ¶ 6.) At the March 22, 2017 appointment, Plaintiff tested positive for rheumatoid factor. (Ahmed Decl., Ex. A at CDCR 1001-1002.) Defendant Dr. Ahmed referred Plaintiff for a rheumatology consultation. (Id.) However, this referral was denied two days later by non-defendant Dr. Bright. (Ahmed Decl. ¶ 23.)

Defendant Dr. Ahmed saw Plaintiff again on April 25, 2017. (Id. ¶ 27.) Plaintiff stated that his pain was "no better" although he was "trying to do stretches . . . and following the advise [sic] of the [physical therapist." (Id., Ex. A at CDCR 0999.) Defendant Dr. Ahmed re-referred Plaintiff for a rheumatology consultation. (Id.) This second referral was again denied. (Ahmed Decl. ¶ 28.)

Plaintiff had a telemetry rheumatology consultation with non-defendant Dr. Ansari on July 13, 2017. (Id. ¶ 31.) In light of non-defendant Dr. Ansari's recommendations, and Plaintiff's "progressive symptoms," Defendant Dr. Ahmed ordered an MRI for Plaintiff, to be completed within one month. (Id. ¶ 32; see also id., Ex. A at CDCR 0998.) This referral was approved July 27, 2017, but Defendant Dr. Ahmed was transferred to Salinas Valley State Prison on August 2, 2017, before the MRI was completed. (Ahmed Dec. ¶¶ 33-36.)

Thirteen days after Defendant Dr. Ahmed's transfer, Plaintiff filed a grievance complaining that his Tylenol prescription had been reduced and that plaintiff had not yet had an MRI despite one having been recommended in July ("August 2017 Grievance").

4

(Compl., Ex. B at 21, 23 (filing grievance on August 15, 2017).) Plaintiff represents in the Complaint that the decision to reduce Plaintiff's Tylenol prescription was made by Defendant Dr. Ahmed. (See Compl. ¶ 20.) However, Defendant Dr. Kalisher represents that this decision was made by Plaintiff's new physician, non-defendant Dr. Silva. (See Kalisher Decl. ¶ 9 ("Dr. J. Silva had previously reduced Mr. Riley's dose of Tylenol with codeine to one tablet three times a day.").) Plaintiff's administrative appeal records support this assertion. (See Compl., Ex. B at 32 (stating that "Dr. Silva reordered Tylenol . . . however the order was only 1 pill")).

Plaintiff's MRI was performed October 6, 2017. (Ahmed Decl. ¶ 36.) When Plaintiff's MRI was completed, it showed that Plaintiff has "moderate L4-5 and L5-S1 and degenerative changes . . . including neural foraminal stenosis and nerve root compressions." (Id., Ex. A at CDCR 0995.) The MRI showed "no significant central canal stenosis." (Id.)

## B. Treatment by Defendant Dr. Kalisher

Defendant Dr. Kalisher does not appear to have ever been Plaintiff's primary physician, but she saw Plaintiff either two or three times while filling in for his regular physician. (Kalisher Decl. ¶¶ 6, 7, 9.)

On March 8, 2017, Defendant Dr. Kalisher renewed Plaintiff's Tylenol prescription. (Id. ¶ 6.)

On September 5, 2017, Defendant Dr. Kalisher had an appointment with Plaintiff while covering for Defendant Dr. Ahmed. (Id. ¶ 7.) Plaintiff reported that he had "improvement of pain [from] doing stretches" and from "reducing workouts," and that his Tylenol prescription was helping with his pain. (Id., Ex. A at CDCR 0996-0997.) Defendant Dr. Kalisher noted that Plaintiff reported a "pain level [of] 6/10 down from 'off the charts,'" had "no pain to palpation," and had "no objective evidence of severe pain." (Id. at CDCR 0997.) Defendant Dr. Kalisher denied Plaintiff's request for a lower bunk chrono. (Id.) However, Defendant Dr. Kalisher continued Plaintiff's Tylenol prescription

"as written." (Id.) Plaintiff represents that, in this appointment, Defendant Dr. Kalisher told him that "prison doctors are authorized . . . to disregard a prisoner's pain after an initial attempt to alleviate pain," and that "minimizing [Plaintiff's] pain was not her concern." (Compl. ¶¶ 26, 27.)

Plaintiff included complaints about Defendant Dr. Kalisher in his August 2017 Grievance, claiming that "Dr. Kalisher made it clear [that] helping me minimize my pain is not her number one concern," that she "refused to issue petitioner a lower bunk chrono," and that she had relied on an erroneous statement from the physical therapist that stretches were helping Plaintiff's pain. (Compl., Ex. B at 24.) Plaintiff also filed a grievance against Defendant Dr. Kalisher several months later, claiming she had decided to cut his Tylenol prescription ("October 2017 Grievance"). (Id., Ex. B at 31.) However, later in the administrative appeals process Plaintiff conceded this decision was made by non-defendant Dr. Silva. (Id. at 32.)

On November 14, 2017, Defendant Dr. Kalisher had an appointment with Plaintiff while covering for non-defendant Dr. Silva, Plaintiff's new primary care physician. (Kalisher Decl. ¶ 9.) Defendant Dr. Kalisher reviewed Plaintiff's MRI with him (see id.), and noted that Plaintiff was reporting a pain level of "6/10 after meds." (Id., Ex. A at CDCR 0995.) Plaintiff requested an increase in the dose of his Tylenol. (Id.) However, Defendant Dr. Kalisher noted that Plaintiff's MRI showed the "changes [to his lower back] are not severe," that the pain he reported was "not acute" at 6/10, and that therefore "CDCR guidelines limits use of" Tylenol prescriptions. (Id. at CDCR 0996.) She referred Plaintiff for a follow-up appointment with his primary care physician, "to be seen before [the prescription] expires." (Id.)

Plaintiff claims that, in this appointment, Defendant Dr. Kalisher told him she did not know how to read an MRI. (Compl. ¶ 34.) He also claims Defendant Dr. Kalisher "deliberately refused to prescribe sufficient pain medication" and told him he would "just have to suffer until" his appointment with non-defendant Dr. Silva, because Defendant Dr.

6

Kalisher did not "have the time to waste on you people." (Id.)

### C. Interactions with Defendant Dr. Friederichs

Defendant Dr. Friederichs does not appear ever to have treated Plaintiff. (See Friederichs Decl. ¶¶ 7-14.) Instead, Defendant Dr. Friederichs appears to have conducted the First-Level Review of Plaintiff's 2016 Grievance and August 2017 Grievance. (See id. at ¶¶ 7, 11.)

Defendant Dr. Friederichs conducted the First-Level Review of plaintiff's 2016 Grievance complaining of chronic lower back pain, and requesting an MRI, stronger pain medication, and a different primary physician. (Id. ¶¶ 6-7.) Defendant Dr. Friederichs interviewed plaintiff in conjunction with this review, and observed that plaintiff "was able to walk and sit without difficulty" at that time. (Id. ¶ 7.) Defendant Dr. Friederichs denied plaintiff's administrative appeal, and explained that "an MRI is only approved if the patient's signs and symptoms indicate that he might benefit from surgery." (Id. & at Ex. A at CDCR 3009.) Defendant Dr. Friederichs proposed different medications for plaintiff, which plaintiff refused. (Id.)

Plaintiff represents that Defendant Dr. Friederichs "personally informed" plaintiff that an MRI would not be provided if any CDCR medical employee believed it to be unnecessary, despite plaintiff's pain, and that Defendant Dr. Friederichs was allowed to "prescribe mere aspirin to treat any ailment." (Compl. ¶ 15, Opp. at 3.)

Plaintiff pursued the 2016 Grievance to upper levels of review, in which Defendant Dr. Friederichs's decision was affirmed. (Friederichs Decl. ¶¶ 8-9.)

Defendant Dr. Friederichs conducted the First-Level Review of plaintiff's August 2017 Grievance, which complained of the reduction in plaintiff's Tylenol prescription. (Id. ¶ 11.) Defendant Dr. Friederichs denied plaintiff's administrative appeal, noting that plaintiff had been referred for an MRI, that plaintiff had reported an improvement in his pain to Defendant Dr. Kalisher, and that the medical team was trying "to maximize function while avoiding the serious side effects of stronger pain medical prescriptions."

7

(Id.) Plaintiff appealed this denial, and Defendant Dr. Friederichs's decision was affirmed at upper levels of review. (Id. ¶¶ 12-13.)

## II. Proceedings in this Court

Plaintiff filed this action on April 2, 2018. (Compl. at 4.) United States Magistrate Judge Ryu screened the Complaint and found that, liberally construed, Plaintiff had stated an Eighth Amendment claim against Defendant Drs. Friederichs, Ahmed, and Kalisher. United States Magistrate Judge Ryu ordered that the Complaint be served upon Defendants.

Defendants moved for summary judgment, Plaintiff opposed this motion, and Defendants filed a reply. Plaintiff filed a sur-reply. (Docket No. 23.) Plaintiff failed to seek approval before filing this sur-reply, as required by the local rules. See Civ. L.R. 7-3(d). Accordingly, the sur-reply is improper, and the Court will not consider it.

## III. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattret*t*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. **Deliberate Indifference**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is,

9

objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however. Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights, McGuckin, 974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury" requirement and noting that Constitution is violated "whether or not significant

10

injury is evident")), but the existence of serious harm tends to support an inmate's deliberate indifference claims, Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 at 1060).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference.

### 1. **Defendant Drs. Ahmed and Kalisher**

The undisputed evidence shows that neither Defendant Dr. Ahmed nor Defendant Dr. Kalisher were deliberately indifferent to Plaintiff's serious medical needs.

Defendant Dr. Ahmed responded promptly to Plaintiff's complaints of back pain, and not only prescribed pain medication but also investigated the source of Plaintiff's back pain. The evidence shows that Defendant Dr. Ahmed evaluated Plaintiff six times in 10 months, and that between appointments with Defendant Dr. Ahmed Plaintiff had at least 13 other appointments with other medical staff at CTF. (Ahmed Decl. ¶¶ 6-32.) During this treatment period, Defendant Dr. Ahmed repeatedly ordered pain medication for Plaintiff. (See id. ¶¶ 6 (ibuprofen); 8 (Naproxen), 15 (ibuprofen); 19-20, 21, 24, 26-27, 29-30 (Tylenol #3).) Although Plaintiff now complains that CTF treated him with "mere aspirin" (Opp. at 3-4), the evidence shows that Plaintiff was prescribed Tylenol #3, which contains codeine, beginning in February 2017 (Ahmed Decl., Ex. A at CDCR 1487). Moreover, in his August 2017 Grievance, Plaintiff stated that his "Tylenol 3 medication

11

helped manage [his] pain." (Compl., Ex. B at 22.)

In addition to treating Plaintiff's pain, Defendant Dr. Ahmed ordered and evaluated x-rays of Plaintiff's spine to investigate the source of Plaintiff's pain. (See Ahmed Decl. ¶¶ 6-7, 17-18). When the x-rays were returned, they showed "no acute finding." (Id. ¶ 7.) There is no evidence indicating that Defendant Dr. Ahmed had reason to disbelieve the x-ray, or that his reliance on the reviewing physician's findings was otherwise unreasonable. Defendant Dr. Ahmed also requested consultations from outside specialists (id. ¶¶ 22-23, 28-31), and referred Plaintiff for an MRI (id. ¶ 32). Accordingly, there is no evidence to support Plaintiff's assertion that Defendant Dr. Ahmed "disregarded" Plaintiff's "pleas" for treatment (see Opp.) or "deliberately and intentionally failed to treat [Plaintiff], or delayed treatment" (id., Ex. B at 1). Despite the negative x-ray findings, Defendant Dr. Ahmed prescribed Plaintiff pain medication, investigated the cause of Plaintiff's pain, and eventually referred Plaintiff for an MRI. None of these actions by Defendant Dr. Ahmed indicates deliberate indifference to Plaintiff's medical needs. See McGuckin, 974 F.2d at 1060.

Similarly, the undisputed evidence shows that Defendant Dr. Kalisher responded appropriately to Plaintiff's complaints of back pain. Defendant Dr. Kalisher was not Plaintiff's primary care provider, and interacted with him only when she was "filling in for his regular primary care physician." (Kalisher Decl. ¶¶ 6-7, 9.) During those interactions, she renewed a prescription for Tylenol with codeine, which Plaintiff conceded in the August 2017 Grievance helped to manage Plaintiff's pain. (Id. ¶ 6.) She also continued prescriptions for Tylenol with codeine that had been written by Plaintiff's regular providers. (Id. ¶¶ 7, 9.) That Defendant Dr. Kalisher renewed prescriptions that had been written by other doctors does not indicate deliberate indifference to Plaintiff's medical needs. See McGuckin, 974 F.2d at 1060.

Plaintiff's claim appears to center on the fact that Defendant Drs. Ahmed and Kalisher were unable to diagnose his back problems and that an outside specialist was able

12

do so.  (See generally, Compl.)  However, Plaintiff has failed to establish that Defendants' failure to diagnose the problems was due to deliberate indifference rather than medical malpractice or negligence, which are insufficient to make an Eighth Amendment violation.  See Toguchi, 391 F.3d at 1060-61.  A difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate indifference.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health.  Toguchi, 391 F.3d at 1058.

In this case, other CTF medical staff concurred with Defendant Dr. Ahmed's conclusions regarding the cause of Plaintiff's pain.  (See id. ¶¶ 10-25 (identifying two doctors and four nurses who agreed with Defendant Dr. Ahmed).  Other medical staff repeatedly concluded that Plaintiff's test results did not reveal any abnormalities.  (Id. ¶¶ 10, 18.)  Defendant Dr. Ahmed's prescriptions were also renewed and continued by other CTF medical staff (see id. ¶¶ 10-12 (ibuprofen and Tylenol)).  In addition to the four doctors who treated Plaintiff directly (Ahmed Decl. ¶¶ 10-25), and the reviews by Defendant Dr. Friederichs, Plaintiff's medical records were reviewed by CTF's Chief Medical Executive and (Compl. Ex. B at 20) and by the Deputy Director and Chief of California Correctional Health Care Services (id., Ex. B at 12, 30), all of whom agreed with the care being given to Plaintiff.  In all, eight doctors reviewed and approved of Plaintiff's treatment.  (See id.)  This does not suggest that the course of treatment followed by Defendant Dr. Ahmed was medically unacceptable, much less that he intentionally chose to pursue medically unacceptable treatment.

In light of the fact that the first tests Defendant Dr. Ahmed ordered for Plaintiff revealed no abnormalities, that multiple doctors concurred with the treatment Defendant Dr. Ahmed ordered, and in light of the fact that Plaintiff repeatedly informed medical staff

13

that he was continuing with his programming and even playing basketball (Ahmed Decl. ¶¶ 6, 7, 11), it cannot be said that Defendant Drs. Ahmed and Kalisher knew that Plaintiff was facing a substantial risk of serious harm and disregarded that risk by following a medically unacceptable path of treatment.

### 2. **Defendant Dr. Friederichs**

Plaintiff's deliberate indifference claim fails as to Defendant Dr. Friederichs.

First, as the Court found, supra, Plaintiff has failed to show that the medical staff at CTF were deliberately indifferent to his medical needs.

Second, as noted supra, Defendant Dr. Friederichs did not treat Plaintiff. Instead, Defendant Dr. Friederichs only reviewed Plaintiff's administrative grievances. To the extent Plaintiff intends to state a claim based on Defendant Dr. Friederichs's denial of Plaintiff's grievances, denial of a grievance generally does not constitute a violation of a prisoner's constitutional rights. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"). Indeed, the Ninth Circuit has repeatedly applied this principle to deliberate indifference claims. See Ross v. McGuinness, 471 F. App'x 608, 609 (9th Cir. 2012) ("To the extent that Ross contended that defendant McGuinness violated Ross's constitutional rights in reviewing and responding to Ross's grievance about his medical care, the district court properly granted summary judgment because such allegations cannot give rise to a § 1983 claim.") (citing Ramirez, 334 F.3d at 860); Gaither v. Sepulveda, 594 F. App'x 449, 450 (9th Cir. 2015) ("The district court properly granted summary judgment on Gaither's claim against Dr. Sepulveda because Gaither failed to raise a genuine dispute of material fact as to whether Dr. Sepulveda knew of and disregarded an excessive risk to Gaither's health in denying his inmate appeals.") (same); Nguyen v. Elam, 738 F. App'x 539, 540 (9th Cir. 2018) ("To the extent Nguyen challenges the processing of his grievances regarding his medical needs, the district court properly dismissed such claims because 'inmates lack a separate constitutional entitlement to a specific ... grievance

14

procedure.'") (same).

Third, Plaintiff's claim against Defendant Dr. Friederichs may not even be exhausted. Plaintiff does not appear to have filed a grievance complaining of Defendant Dr. Friederichs's actions in the first instance (see generally, Compl., Ex. B (mentioning Defendant Dr. Friederichs only at upper levels of review)), although California requires that an inmate name "all staff member(s) involved" and "describe their involvement in the issue" when an inmate first submits a grievance, see Cal. Code Regs. tit. 15, § 3084.2(a). Nor does it appear that prison officials addressed Plaintiff's late-added allegations against Defendant Dr. Friederichs at later stages of the administrative appeals, as would be required to cure Plaintiff's failure to exhaust. *See Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (holding a plaintiff had exhausted his grievance, despite failing to name all staff members, where prison officials decided his claim on the merits at all levels of review). However, because Defendants did not raise this issue, and because plaintiff's claim against Defendant Dr. Friederichs fails on the merits, the Court need not address this issue.

### 3. Conclusion Regarding Claims in the Complaint

Based on the evidence presented, Defendants have shown that there is no genuine issue of material fact with respect to Plaintiff's deliberate indifference claim against them. See Celotex Corp., 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law. Id.; Celotex Corp., 477 U.S. at 323.

### 4. Claim Added in the Opposition

In his Opposition, Plaintiff adds a number of new facts which post-date the Complaint. Plaintiff represents that he was informed by a non-CTF doctor in consultation on August 20, 2018 that Plaintiff has a herniated disk, and that this has caused permanent

15

nerve damage. (See Opp. at 5-6, 8; see also Opp., Exs. A-B.) Plaintiff also represents that the outside consultant who discovered the herniated disk has recommended surgery, which has yet to be performed. (See id.) The Court's opinion does not reach a claim predicated on these new facts, for three reasons.

First, the Complaint is entirely devoid of facts regarding surgery recommendations and a failure to provide surgery after such recommendations. (See generally, Compl.) Accordingly, Defendants did not receive "fair notice" that plaintiff intended to base a claim on these grounds. See Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 969 (9th Cir. 2006) (affirming summary judgment where the complaint did not give fair notice of the factual basis for a claim raised for first time in opposition to summary judgment). Because Defendants had no notice that Plaintiff intended to base a claim on the lack of surgery following an outside consultant's diagnosis, the Court will not consider this new theory raised for the first time in opposition to a summary judgment motion. See Quiroz v. Horel, 85 F. Supp. 3d 1115, 1126 n.8 (N.D. Cal. 2015) (rejecting a claim raised for the first time in opposition); see also Saif'ullah v. Cruzen, No. 15-CV-01739 LHK, 2017 WL 4865601, at *3 (N.D. Cal. Oct. 26, 2017) (same), aff'd, 735 F. App'x 415 (9th Cir. 2018).

Second, Plaintiff does not appear to have exhausted any claim predicated on these facts before filing suit. The Court notes that Plaintiff filed this lawsuit on April 17, 2018, but claims that he received the outside consultant's diagnosis on August 20, 2018. (Opp. at 5.) Even if Plaintiff filed and exhausted administrative appeals related to CTF's failure to act on the outside consultant's diagnosis, those appeals would necessarily have been exhausted after this suit was filed. Under the PLRA, inmates must exhaust administrative remedies before filing suit:

> *McKinney* held that the PLRA's exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims, even if the prisoner exhausts his administrative remedies while his case is pending. . . . *Vaden* held that a prisoner must exhaust his administrative remedies before he tenders his complaint to the district court. . . . Together, these cases stand for the proposition that a

16

>prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court.

*Rhodes*, 621 F.3d at 1004–05 (summarizing the pre-suit exhaustion requirement) (citations omitted). The Court therefore cannot consider this new, unexhausted claim in the instant lawsuit.

Third and finally, Plaintiff fails to explain the involvement of Defendant Drs. Ahmed, Kalisher, and Friederichs in his treatment since August 20, 2018. Even if the Court were to reach Plaintiff's new claim, it would fail as to the defendants named in the instant action.

Accordingly, the Court does not consider Plaintiff's new claim that CTF failed to provide surgery even after a consulting specialist recommended that Plaintiff be given surgery. Because Plaintiff's new claim is not addressed in this order, Plaintiff is not procedurally precluded from filing this new claim at a later date, after he has properly exhausted his administrative remedies.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, (Docket No. 17), is **GRANTED**. Plaintiff's claims are **DISMISSED** with prejudice.

This order terminates Docket No. 17.

**IT IS SO ORDERED.**

Dated: 6/12/2019

EDWARD J. DAVILA
United States District Judge

17